UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
ROBIN LUKOWSKI, ROBERT LUKOWSKI, DAVID
JENSEN, THOMAS CASTIGLIONE, TERI DURSO,
ROBERT HEIECK, and SUZANNE CIRENCIONE

                    Plaintiffs,              08-CV-6098

          v.                                 **DECISION
                                             and ORDER**

THE COUNTY OF SENECA, LEO T. CONNOLLY,
JAMES R. LARSON, RICHARD SWINEHART,
JACK STENBERG, SHARON SECOR, STEVEN
GETMAN, LOUIS VANCLEEF, CHRISTOPHER
CONSTABLE, SCOTT BUCK, JAMES SINICROPI,
FINGERLAKES1.COM, INC., and TIMEWARNER
CABLE, INC.,

                    Defendants.
_____

## **INTRODUCTION**

     Plaintiffs Robin Lukowski, Robert Lukowski, David Jensen, Thomas
Castiglione, Teri Durso, Robert Heieck and Suzanne Cirencione
("Cirencione") (collectively "plaintiffs") bring this action pursuant
to 42 U.S.C. §1983 against The County of Seneca ("Seneca County"), Leo
T. Connolly ("Connolly"), James R. Larson ("Larson"), Richard
Swinehart, the Seneca County District Attorney ("Swinehart"), Jack
Stenberg ("Stenberg"), Sharon Secor, former Seneca County Manager
("Secor"), Steven Getman, former Seneca County Attorney ("Getman"),
Louis VanCleef ("VanCleef"), Christopher Constable ("Constable"), Scott
Buck ("Buck"), James Sinicropi ("Sinicropi"), FingerLakes1.com, Inc.
and TimeWarner Cable, Inc. ("TWC")[1] (collectively "defendants") claiming
that their civil rights were violated in connection with the
retaliation they experienced for the public criticism of defendants.

_____

[1]On February 6, 2009 the Court "So Ordered" a "Stipulation of Dismissal" provided by the parties pursuant
to Fed.R.Civ.P. 41(a)(1) dismissing with prejudice all claims asserted against Time Warner Cable, Inc.

Specifically, plaintiffs allege five separate causes of action
including: (1) First Amendment Retaliation ("First Cause of Action");
(2) Malicious Abuse of Process ("Second Cause of Action"); (3)
Conspiracy claim under 42 U.S.C. §1985 ("Third Cause of Action");[2] (4)
Electronics Communication Privacy Act ("ECPA")claim pursuant to 18
U.S.C. §2701 et seq. ("Fourth Cause of Action"); and (5) violation of
the Cable Communications Privacy Act under 47 U.S.C. §551 et seq.
("Fifth Cause of Action").[3]

Plaintiffs seek declaratory relief, compensatory damages and
attorney's fees and costs for the deprivation of their civil rights.
Defendants filed a total of six motions to dismiss requesting various
relief. Connolly, Swinehart, Secor and Getman move to dismiss
plaintiffs' Complaint in its entirety pursuant to Federal Rules of
Civil Procedure 12(b)(6), alleging that plaintiffs have failed to state
a claim upon which relief may be granted and that they are entitled to
a dismissal as a matter of law.[4] Defendant Seneca County moves to
dismiss the First, Third and Fifth Causes of Action. Moreover,
defendant Larson moves to dismiss only the First and Third Causes of
Action. In addition, Swinehart claims that the Complaint must be
dismissed as to him based on the doctrine of absolute immunity.

---

[2]Plaintiffs concede that they have no cause of action for conspiracy in violation of 42 U.S.C. §1985. See Pls. Br. at 3. Thus, plaintiffs' Third Cause of Action is dismissed with prejudice.

[3]Plaintiffs concede that the Cable Communications Privacy Act only allows for a private right of action against a cable company for a breach of its provisions. Accordingly, plaintiffs consent to dismissing their Fifth Cause of Action. Therefore, the Fifth Cause of Action is dismissed with prejudice.

[4]In the alternative, Connolly also moves for judgment on the pleadings of the plaintiffs' Complaint pursuant to Fed.R.Civ.P.12(c).

Defendant Getman contends that the doctrine of absolute legislative immunity is applicable and accordingly the claims against him must be dismissed. Further, defendants Larson, Connolly, Secor and Getman argue that the doctrine of qualified immunity applies to them and on this alternative basis the Complaint should be dismissed as to them. Defendants Secor and Getman also assert that if the Court does not dismiss plaintiffs' Complaint, an Order pursuant to Fed.R.Civ.P. 21 and 42(a) severing plaintiff Cirencione's claims from claims made by the remaining plaintiffs is appropriate. Finally, several defendants request that if the Complaint is not dismissed in its entirety, the Court should strike the introductory paragraph of the Complaint as well as ¶43 pursuant to Rule 12(f) since they contain scandalous and immaterial allegations.[5]

For the reasons set forth in more detail below, defendants' motions to dismiss are granted in part and denied in part.

**BACKGROUND**

Unless otherwise noted, the following facts are taken from plaintiffs' Complaint. Plaintiffs allege that prior to the election for Seneca County Sheriff in November 2003, each of the plaintiffs frequently posted comments on a community website known as Fingerlakes1.com critical of Seneca County government officials, including defendants in this action. See Compl. ¶¶24-25. Indeed,

---

[5] Getman argues that if the Court does not strike the introductory paragraph and ¶43 pursuant to Rule 12(f) then alternatively Getman moves for a more definite statement under Rule 12(e).

plaintiffs claim they posted their comments anonymously on the website using "handles" to identify themselves. See id. ¶24. In addition, plaintiffs claim that "[s]ubsequent to the 2003 election until the Plaintiffs' discovery of the Defendants' activities in March 2007, the Plaintiffs' criticism... increased in both frequency and ferocity...." See id. ¶26. According to the Complaint, beginning in 2004, Connolly and Larson started a campaign of retaliation against plaintiffs for their public criticism. See id. ¶27. Plaintiffs allege that Connolly and Larson compelled Fingerlakes1.com and its principal Sinicropi to disclose the e-mail addresses of the anonymous individuals who were posting comments critical of them on the website. See id. ¶28. This conduct was allegedly performed without a warrant or subpoena and under the pretext of a pending criminal investigation. See id. Plaintiffs also contend that Sinicropi and Fingerlakes1.com provided the requested information without providing plaintiffs' with the proper notice required under the ECPA. See id.

Moreover, plaintiffs claim that when Larson and Connolly "could not determine the identities of all the Plaintiff from the information provided by Sinicropi because many of the email [addresses] were ... anonymous," defendants enlisted the help of Swinehart. See id. ¶29. Plaintiffs further allege that Swinehart, at the request of Connolly and Larson and with the help of Stenberg, issued a series of allegedly "illegal subpoenas" to various internet providers, including TWC to determine the identity of individuals who posted on an internet

website. <u>See</u> <u>id.</u> Plaintiffs allege that Swinehart "knew, or should have known" of the illegal motives in requesting these subpoenas. <u>See</u> <u>id.</u>, ¶30. Plaintiffs claim that Connolly and Larson started a campaign to retaliate against and harass them for their public criticism after conclusively identifying plaintiffs through the subpoenas. <u>See</u> <u>id.</u> ¶¶32-33. The alleged retaliation included surveillance and monitoring by Seneca County deputies involving defendants VanCleef, Constable and Buck, denial of promotions, job assignments and additional training for plaintiffs that were employed by Seneca County, and various other retaliatory tactics. <u>See</u> <u>id.</u> ¶¶34-39.

The Complaint also asserts that Cirencione was "targeted for retaliation" by Secor and Getman as a result of her "sending electronic mail to the former County Manager and making internet postings criticizing officials in Seneca County government[.]" <u>See</u> <u>id.</u> ¶39. Plaintiffs allege that the retaliatory action taken by Secor and Getman involve "illegally subpoena[ing] Cirencione's internet records using a subpoena issued by the County Attorney's office[,]" and banning Cirencione from Seneca County property "because Secor knew who 'Madison' was. <u>See</u> <u>id.</u> Madison is... Cirencione's 'handle' for posts on Fingerlakes1.com." <u>See</u> <u>id.</u>

The Complaint alleges that plaintiffs learned of the allegedly illegal conduct of the defendants in "late March 2007, ... after being contacted by Ontario County District Attorney Michael Tantillo, the special prosecutor assigned to investigate the actions of Connolly,

Larson and others." <u>See</u> <u>id.</u> ¶40. In addition, plaintiffs claim that as a result of the investigation, the Grand Jury indicted Connolly and Larson on a range of criminal charges. <u>See</u> <u>id.</u> ¶41. Further, plaintiffs contend that the Grand Jury issued a report recommending disciplinary action against Getman, Secor, Swinehart, Stenberg, VanCleef, Constable and Buck for their actions against plaintiffs involving the misuse of subpoenas to learn the identities of the plaintiffs. <u>See</u> <u>id.</u> ¶43.

## **DISCUSSION**

### I.   **Defendant's Motion for Judgment on the Pleadings and Defendants' Motion to Dismiss**

A Rule 12(c) motion is decided under the same standard as a Rule 12(b)(6) motion. <u>See</u> <u>Burnette v. Carothers</u>, 192 F.3d 52, 56 (2d Cir. 1999), cert. denied, 531 U.S. 1052 (2000). In reviewing a motion to dismiss under Rule 12(b)(6), a court must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Cleveland v. Caplaw Enters.</u>, 448 F.3d 518, 521 (2d Cir.2006); <u>Nechis v. Oxford Health Plans, Inc.</u>, 421 F.3d 96, 100 (2d Cir.2005). The plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." <u>See</u> <u>Iqbal v. Hasty</u>, 490 F.3d 143, 157-58 (2d Cir.2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>See</u> <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, ----, 127 S.Ct. 1955, 1969 (2007). The

Court does not, therefore, require "heightened fact pleading of specifics, but only enough facts to state a claim for relief that is plausible on its face." See id. at 1974. In order to state a claim, the factual allegations contained in the complaint "must be enough to raise a right to relief above the speculative level." See id. at 1965. Where a plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." See id. at 1974.

Further, in reviewing a motion to dismiss under Rule 12(b)(6), "the district court is normally required to look only to the allegations on the face of the complaint." See Roth v. Jennings, 489 F.3d 499, 509 (2d Cir.2007). The Court may only consider a document not appended to the complaint if the document is "incorporated in [the complaint] by reference" or is a document "upon which [the complaint] solely relies and ... is integral to the complaint." See id. (quoting Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47 (2d Cir.1991) (emphases in original)).[6]

## II.   **Absolute Immunity Claims**

### A.   **Absolute Immunity Claim of Defendant Swinehart**

Swinehart argues that the Court should dismiss plaintiffs' claims against him, as the District Attorney on the ground of absolute immunity. Swinehart contends that the subpoenas he is alleged to have

---

[6]Courts also "'routinely take judicial notice of documents filed in other courts ... not for the truth of the matters asserted in other litigation, but rather to establish the fact of such litigation and related filings.'" See Crews v. County of Nassau, 2007 WL 316568 at *2, n. 2 (E.D.N.Y. 2007) (quoting Kramer v. Time Warner Inc., 937 F.2d 767, 774 (2d Cir.1991)).

issued is conduct that is "intimately associated with *the judicial phase of the criminal process*." See Swinehart Br. at 6. (citations omitted) (emphasis in original). Plaintiffs contend that Swinehart was not acting in his role as an "advocate for the people" rather, he abused his power outside the confines of any legitimate criminal investigation. See Pls. Br. at 5.

The question of whether a prosecutor has absolute immunity "depends principally on the nature of the function performed, not on the office itself." See Ying Jing Gan v. City of New York, 996 F.2d 522, 530 (2d Cir.1993); see also Kalina v. Fletcher, 522 U.S. 118 (1997) (reaffirming this functional approach). Under Second Circuit case law, prosecutors are entitled to absolute immunity for those activities "'intimately associated with the judicial phase of the criminal process.'" See Hill v. City of New York, 45 F.3d 653, 660-61 (2d Cir.1995) (quoting Imbler v. Pachtman, 424 U.S. 409, 430 (1976)); see also Ying Jing Gan, 996 F.2d at 530 ("It is well- settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983.") (quotation omitted); Robison v. Via, 821 F.2d 913, 918 (2d Cir.1987); Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir.1981). Activities falling within the ambit of this phrase include "initiating a prosecution and presenting the case at trial ... evaluating and organizing evidence for presentation at trial or to a grand jury ... or determining which offenses are to be charged." See Hill, 45 F.3d at

661. (citations omitted).[7] The protected category is thus a broad one, extending to "'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate'" for the state. <u>See</u> <u>id.</u> (quoting <u>Dory v. Ryan</u>, 25 F.3d 81, 83 (2d Cir.1994).    T h e Complaint, which is the only statement of facts the Court can consider on a motion to dismiss, alleges that Swinehart, at the request of Connolly and Larson issued a series of allegedly illegal subpoenas to various internet providers to determine the identity of individuals who posted on an internet website. <u>See</u> Compl. ¶29. In addition, plaintiffs allege that Swinehart "knew, or should have known" of the illegal motives in requesting these subpoenas. <u>See</u> <u>id.</u>, ¶30. Accepting these allegations as true, the court must decide whether those actions fall within the functions protected by absolute immunity. First, the Complaint alleges no facts that demonstrate the subpoenas were "intimately associated with the judicial phase of [any] criminal process[,]" against any of the plaintiffs. <u>See</u> <u>Imbler</u>, 424 U.S. at 430. There is nothing in the Complaint that shows that plaintiffs were arrested because of the subpoenas or that a criminal case was commenced due to information obtained from the subpoenas.

    Second, Swinehart argues that the function alleged in plaintiffs' Complaint is "one which is part of the prosecutor's role as an advocate

---

[7]The "judicial phase of the criminal process" encompasses not only the actual trial, but also all actions that a prosecutor takes "in preparing for the initiation of judicial proceedings ... and which occur in the course of his role as an advocate for the State." <u>See</u> <u>Kalina</u>, 522 U.S. at 126 (internal quotation marks omitted). Such actions include the decision to bring particular charges against a defendant, <u>see</u> <u>Ying Jing Gan</u>, 996 F.2d at 530, the presentation of evidence to a grand jury, <u>see</u> <u>Barrett v. United States</u>, 798 F.2d 565, 571- 72 (2d Cir.1986), and the evaluation and organization of evidence prior to trial. <u>See</u> <u>Kalina</u>, 522 U.S. at 126-127.

in the judicial process." See Swinehart Br. at 6. It is the party claiming absolute immunity who "bears the burden" of establishing its applicability." See Butz v. Economou, 438 U.S. 478, 506 (1978), accord Doe v. Phillips, 81 F.3d 1204, 1209 (2d Cir.1996) (holding that prosecutors must show that they were acting as advocates when they engaged in challenged function). I find that Swinehart has not carried this burden. The alleged action undertaken by Swinehart-issuance of subpoenas to internet providers--has not been shown to fall within the scope of activities deemed to be closely related to the judicial phase of *any* criminal legal process against plaintiffs and thus is not protected by absolute immunity. As noted above, the motivation behind the defendants' actions is not of importance, so long as they were acting within their role as advocates for the state pursuing the judicial phase of a criminal case. See Hill, 45 F.3d at 661 (quoting Dory, 25 F.3d at 83)). At this stage of the pleadings, based on the allegations of the Complaint, the Court finds that Swinehart's motion to dismiss based on absolute immunity for the conduct alleged in the Complaint is denied without prejudice.

**B.   Absolute Legislative Immunity Claim of Defendant Getman**

Legislators are entitled to absolute legislative immunity for claims brought under §1983. See Bogan v. Scott-Harris, 523 U.S. 44 (1998). Under the Supreme Court's functional test of absolute legislative immunity, whether immunity attaches turns not on the official's identity, or even on the official's motive or intent, but on the nature of the act in question. See Harhay v. Town of Ellington Bd.

of Educ., 323 F.3d 206, 210 (2d Cir.2003) (citing Bogan, 523 U.S. at 54) ("Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it.") Specifically, legislative immunity shields an official from liability if the act in question was undertaken "in the sphere of legitimate legislative activity." See Bogan, 523 U.S. at 54 (quoting Tenney v. Brandhove, 341 U.S. 367, 376 (1951)).[8] Legislative immunity bars suits for damages, injunctions and declaratory relief against legislators. See State Employees Bargaining Agent Coalition v. Rowland, 494 F.3d 71, 81-88 (2d Cir.2007). Accordingly, legislators, whether in the local, state and regional levels, are entitled to absolute immunity for their legislative activities. See Bogan, 523 U.S. at 49; Harhay, 323 F.3d at 210.

Getman argues that the privilege of absolute immunity extends to an attorney for the legislative body and thus he is protected by the immunity. See Getman Br. at 15. The Complaint alleges that Getman subpoenaed Cirencione's internet records using a subpoena issued by the County Attorney's office. See Compl. ¶39. This action of defendant in issuing a subpoena for internet records of one of the plaintiffs "were, in form, quintessentially [non]-legislative." See Bogan, 523 U.S. at 55. The act for which immunity is sought by Getman is not within the "sphere of legitimate legislative activity." See id. at 54.

---

[8]The Supreme Court held that the introduction of a proposed budget and the subsequent signing into law of an ordinance adopting the budget are legislative functions for which executive officials enjoy absolute immunity from § 1983 liability regardless of their motive or intent. See Bogan, 523 U.S. at 55.

Accordingly, based on the limited allegations of the Complaint, Getman is not entitled to absolute legislative immunity. The Court finds that at this stage of the pleadings Getman's motion to dismiss on the basis of absolute legislative immunity as alleged in the Complaint is denied without prejudice.[9]

### III. __Plaintiffs have failed to state a cause of action relating to First Amendment Retaliation__

The Court of Appeals has instructed that the elements of a First Amendment retaliation claim are dependent on the "factual context" of the case before the district court. See Williams v. Town of Greenburgh, 535 F.3d 71, 76 (2d Cir.2008). For instance, a public employee who alleges First Amendment retaliation must allege the following: "(1) the speech at issue was made as a citizen on matters of public concern rather than as an employee on matters of personal interest; (2) he or she suffered an adverse employment action; and (3) the speech was at least a substantial or motivating factor in the adverse employment action." See Johnson v. Ganim, 342 F.3d 105, 112 (2d Cir.2003) (internal quotation marks and citations omitted); see also Woodlock v. Orange Ulster B.O.C.E.S., 281 Fed.Appx. 66, 68, 2008 WL 2415726 at *1 (2d Cir. 2008). A private citizen, on the other hand, must allege: "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' action effectively chilled the exercise of

---

[9]Defendant Getman also adopted and incorporated by reference the absolute immunity arguments of defendant Swinehart. See Getman Br. at 15. For the reasons stated in Point II.A., the Court also denies without prejudice Getman's motion to dismiss based on absolute immunity.

his First Amendment right." See <u>Curley v. Vill. of Suffern</u>, 268 F.3d 65, 73 (2d Cir.2001).

In the normal course, a public employee is not required to show that his or her speech was actually chilled due to the defendant's retaliatory conduct because, in the employment context, the public employee usually suffers an adverse employment action--above and beyond chilling--that would demonstrate injury. See <u>Morrison v. Johnson</u>, 429 F.3d 48, 51 (2d Cir.2005) (public employee not required to allege actual chill in addition to adverse employment action); <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 382 (2d Cir.2004) ("[I]t is well-settled that public employees alleging retaliation for engaging in protected speech are not normally required to demonstrate a chill subsequent to the adverse action taken against them.... [T]he employee's essential burden is to show that he or she was punished, not that his or her speech was 'effectively chilled' from that point forward."). Instead, it is sufficient if the "retaliatory conduct ... would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." See <u>Washington v. County of Rockland</u>, 373 F.3d 310, 320 (2d Cir.2004).

In contrast, where a private citizen claims First Amendment retaliation by a public official, the citizen is required to show that his or her speech was actually chilled; otherwise, the citizen would, in most instances, be unable to demonstrate any concrete harm. See <u>Curley</u>, 268 F.3d at 73 (actual chill required) (citing <u>Singer v. Fulton Co. Sheriff</u>, 63 F.3d 110, 120 (2d Cir.1995) (no chilling effect where

speech continued following arrest). Here, several plaintiffs are
alleged to be private citizens (see Compl. ¶¶ 4-5, 9), while others are
alleged to be public employees (see Compl. ¶¶ 6-8, 10). However,
because plaintiffs assert a violation of a private citizen's rights
(see Compl. ¶46), the Court considers whether plaintiffs have alleged
the requisites for defendants' violation of a private citizen's First
Amendment rights.

The Court assumes for purposes of this motion to dismiss that
plaintiffs have satisfied the first and second elements of the First
Amendment retaliation claim. Accordingly, the only issue for the Court
to consider is whether plaintiffs have alleged facts which satisfy the
third element that defendants' action effectively chilled the exercise
of plaintiffs' First Amendment rights. In order to meet the chilling
requirement, plaintiffs must prove that the retaliatory "official
conduct actually deprived them of that right" by either (1) silencing
them or (2) having some "actual, non-speculative chilling effect on
[their] speech." See Williams, 535 F.3d at 78 (internal quotation marks
omitted)(quoting Columbo v. O'Connell, 310 F.3d 115, 117 (2d
Cir.2002)). Thus, "[w]here a party can show no change in his behavior,
he has quite plainly shown no chilling of his First Amendment right to
free speech." See Curley, 268 F.3d at 73. In particular, "[t]he Supreme
Court has held that 'allegations of a subjective "chill"' are not an
adequate substitute for a claim of specific present objective harm or
a threat of specific future harm." See id. (quoting Laird v. Tatum, 408
U.S. 1, 13-14 (1972)).

The Court finds that plaintiffs have failed to sufficiently allege that defendants' retaliatory conduct adversely affected plaintiffs' constitutionally-protected expression. See Camacho v. Brandon, 317 F.3d 153, 163 n. 11 (2d Cir.2003) ("[N]ot every action taken in retaliation against a plaintiff's constitutionally protected activities will necessarily adversely affect those activities.") Plaintiffs allege that they made comments critical of the defendants on the Fingerlakes1.com website from 2003 until approximately March 2007. See Compl. ¶26. In addition, they allege that defendants retaliated against them for making those critical comments. See id., ¶¶28-39. However, plaintiffs also allege that they first learned of the defendants' conduct in March 2007, which was years after the website posting began. See id. ¶40. Plaintiffs did not allege facts that suggest they were prevented from making posts to the website. Indeed, they continued to communicate with and post messages to the website from 2003 through March 2007 when they learned of the defendants' actions from the Ontario County District Attorney. See id. Accordingly, there is no allegation that defendants' retaliation against plaintiffs actually chilled or silenced their speech. See Gill, 389 F.3d at 381 (actual chill is a requirement of a First Amendment claim involving private citizen's criticism of public officials); Curley, 268 F.3d at 73 (in context of private citizen criticizing public officials, plaintiff must show that protected speech was "actually chilled," i.e., that there was some change in plaintiff's behavior as a result of defendant's conduct). Accordingly, plaintiffs'

first cause of action, asserting a violation of their First Amendment rights is dismissed with prejudice.[10]

## IV.   **Second Cause of Action**

## A.   **Malicious Abuse of Process**

Under New York law,[11] such an action will lie against a defendant who "(1) employs regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." See Cook v. Sheldon, 41 F.3d 73, 80 (2d Cir.1994), citing Curiano v. Suozzi, 63 N.Y.2d 113, 116 (1984). "The gist of the action for abuse of process lies in the improper use of process after it is issued. To show that

---

[10]Plaintiffs informally request leave to amend to add allegations to their Complaint relating to defendants' "chilling effect" on plaintiffs' speech. See Pls. Br. at 3. Defendants argue that plaintiffs have failed to make a formal motion to amend under Rule 15(a)(2). See Secor's Reply Br. at 3. However, plaintiffs' failure to file a formal motion for leave to amend is not fatal to their request. See McLaughlin v. Anderson, 962 F.2d 187, 195 (2d Cir.1992) (noting that where plaintiff has made its desire to amend clear, the lack of a formal motion does not require the district court to deny leave to amend); see also O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 68 n.6 (2d Cir.2002) (same). In addition, the decision to grant or deny leave to amend a complaint remains within the court's discretion. See Foman v. Davis, 371 U.S. 178, 182 (1962). In the first instance, plaintiffs have not submitted a proposed First Amended Complaint, nor have they attempted in their opposition to make any valid modifications of the factual allegations contained in the complaint to show a factual basis for alleging the "actually chilled" element. Further, a district court may deny leave to amend where such amendment would be futile. See Hom Sui Ching v. U.S., 298 F.3d 174, 180 (2d Cir.2002) (citing Jones v. N.Y. State Div. of Military & Naval Affairs, 166 F.3d 45, 50 (2d Cir.1999)). An amendment will be deemed futile, and the motion to amend denied, where the amendment would be subject to dismissal for failure to state a claim upon which relief may be granted. See Milanese and Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir.2003) ("leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss ..."). Here, I conclude that it would be futile to allow plaintiffs to amend their Complaint with respect to the First Amendment Retaliation claim. The allegations show that plaintiffs learned for the first time in March 2007 of defendants' conduct. However, prior to that time, plaintiffs' criticism of defendants increased in both "frequency and ferocity." See Compl. ¶26. Additional facts will not change this scenario. As stated in Point III above, plaintiffs cannot allege that their speech was "actually chilled", and therefore any amendment would be futile.

[11]This Court must examine plaintiffs' abuse of process claim for legal sufficiency by looking to state law for the elements of a malicious abuse of process claim. See Wilson v. Garcia, 471 U.S. 261, 277 (1985)[state law is authoritative source of elements of Section 1983 cause of action.]

regularly issued process was perverted to the accomplishment of an improper purpose is enough." See Dean v. Kochendorfer, 237 N.Y. 384, 390 (1924). However, "a malicious motive alone ... does not give rise to a cause of action." See Curiano, 63 N.Y.2d at 117; see also Chamberlain v. Lishansky, 970 F.Supp. 118, 121-22 (N.D.N.Y.1997). "Abuse, therefore, lies not in the synthesis of proper purpose and suspect motive. Improper motive is only abuse when joined with improper purpose." See Chamberlain, 970 F.Supp. at 122. As the Second Circuit has explained, "it is not sufficient for a plaintiff to allege that the defendant[ was] seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that [he] aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution." See Savino v. City of New York, 331 F.3d 63, 77 (2d Cir.2003); Lopez v. City of New York, 901 F.Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after the process is issued").

Getman contends that plaintiffs have failed to allege that the subpoenas in question were not issued for a proper purpose or to obtain necessary information. Assuming the truth of the facts pleaded in the Complaint along with every favorable inference, plaintiffs have adequately plead all three elements of the abuse of process claim. The Court finds that apart from impugning defendants' motives, plaintiffs have alleged that defendants used the subpoena for anything other than obtaining testimony and documents from plaintiffs, which are the purposes for which a subpoena is used. Accordingly, these are "collateral objectives" outside the legitimate ends of the process.

Moreover, there are no allegations in the Complaint that defendants ever filed a criminal complaint against plaintiffs or ever initiated a Grand Jury investigation into any criminal conduct of the plaintiffs after the subpoenas were issued. Thus, defendants' motion to dismiss plaintiffs' abuse of process claims are denied.

### B.   Statute of Limitations

Getman argues that Cirencione's claim is subject to the one-year statute of limitations under CPLR 215(3) and although no date is included in the Complaint, Cirencione "must have known about the alleged abuse of process by the date...she was 'informed that she was banned' from Seneca County property." See Getman Br. at 9. All appellate courts considering CPLR 215(3) have recognized that a claim for damages for an intentional tort such as abuse of process is subject to the one-year limitations period of CPLR 215. See Borison v. Cornacchia, 1997 WL 232294 at *1 (S.D.N.Y.1997)("all appellate courts that have considered [CPLR 215(3)] recognize that a claim for damages for an intentional tort such as abuse of process is subject to the one-year limitations period"); Riddell Sports Inc. v. Brooks, 872 F.Supp. 73, 76 n. 1 (S.D.N.Y.1995) (one year statute of limitations applies to abuse of process claims); Cuillo v. Shupnick, 815 F.Supp. 133, 136 (S.D.N.Y.1993)(one year statute applies to abuse of process claim); Bittner v. Cummings, 188 A.D.2d 504, 506, 591 N.Y.S.2d 429, 431 (2d Dep't 1992)("Abuse of process...[is an] intentional tort...governed by CPLR 215, the one-year Statute of Limitations.")

Here, the Complaint alleges that plaintiffs learned of the allegedly illegal conduct of the defendants "first the first time" in "late March 2007, ... after being contacted by Ontario County District Attorney Michael Tantillo[.]" See Compl. ¶40. The Complaint was filed on March 4, 2008. In accepting as true the factual allegations set forth in the Complaint and drawing all reasonable inferences in favor of the plaintiffs (see Cleveland, 448 F.3d at 521), this Court finds that Cirencione's claim is not time-barred under CPLR 215(3). Thus, based on the standards of a motion to dismiss, the Court cannot dismiss Cirencione's claims based on the one-year statute of limitations.[12]

**C.   Fourth Amendment Claim**

Defendant Swinehart, relying on U.S. v. Miller, 425 U.S. 435 (1976) argues that plaintiffs had no reasonable expectation of privacy in subscriber identity information, which they voluntarily disclosed to their respective internet providers. See Swinehart Br. at 8-9; See also Connolly Br. at 2. In addition, defendant Getman contends that the Complaint fails to state a claim for violation of the Fourth Amendment because it fails to specify which internet records of plaintiff Cirencione were allegedly subpoenaed. See Getman Br. at 6 citing Freedman v. Am. Online, Inc., 412 F.Supp.2d 174, 181-182 (D.Conn. 2005) ("[C]ourts have universally found that, for purposes of the Fourth

---

[12]Alternatively Getman moves for a more definite statement under Rule 12(e) requesting the date that any subpoena was issued seeking Cirencione's internet records and the date Cirencione was allegedly "informed that she was banned" from Seneca County property. See Getman Br. at 21. Given, the Court's decision relating to the Statute of Limitations, Getman's motion for more definite statement is denied as moot.

Amendment, a subscriber does not maintain a reasonable expectation of privacy with respect to his subscriber information.")

    <u>Miller</u> addresses the Fourth Amendment and the risk assumed when information is conveyed to an institutional third party. In <u>Miller</u>, the Supreme Court rejected a defendant's challenge to the use of grand jury subpoenas to obtain banking records from his bank, concluding that no legitimate expectation of privacy existed in the contents of the bank records. <u>See</u> <u>id.</u> at 442. An individual "takes the risk, in revealing his affairs to another, that the information will be conveyed by that person to the Government." <u>See</u> <u>id.</u> at 443. The Court reasoned: "All of the documents obtained, including financial statements and deposit slips, contain only information voluntarily conveyed to the banks and exposed to their employees in the ordinary course of business." <u>See</u> <u>id.</u> at 442. In <u>Freedman</u>, the Court held that the Internet service subscriber did not have objectively reasonable expectation of privacy in his non-content subscriber information, which thus was not entitled to Fourth Amendment protection. <u>See</u> <u>Freedman</u>, 412 F.Supp.2d at 183. The Court reasoned that the subscriber agreement expressly permitted Internet service provider (ISP) to reveal subscriber information when necessary for providing service requested, and also indicated that ISP would release information about subscriber's account to comply with valid legal process or in special cases involving physical threat to subscriber or others, and that ECPA permitted ISP to voluntarily provide government with subscriber information.

If plaintiffs had a reasonable expectation of privacy in the subscriber information they submitted to TWC to establish their Internet accounts, then the defendants' subpoena of TWC would have been unconstitutional, despite any ECPA provisions to the contrary.[13] But under federal law such an expectation on their part may not have been reasonable.[14] Statutes have been considered by the Court as bearing on the question of whether society accepts a subjective privacy expectation as reasonable. See, e.g., Miller, 425 U.S. at 442-43 (noting that Congress "assumed" that "information kept in bank records" lacked "any legitimate expectation of privacy" when enacting the then-applicable "Bank Secrecy Act," "the expressed purpose of which [was] to require records to be maintained because they have a high degree of usefulness in criminal, tax, and regulatory investigations and proceedings." (quotation marks and citation omitted)).

As mentioned above, of particular relevance here is the EPCA, considered in evaluating privacy expectations in information submitted to ISPs. See United States v. Hambrick, 55 F.Supp.2d 504, 507 (W.D.Va.1999), aff'd, 225 F.3d 656 (4th Cir.2000) ("For Fourth Amendment purposes, this court does not find that the ECPA has

---

[13]Applicable statutes can suggest whether an expectation of privacy is reasonable. For the online world, one statute, the ECPA is particularly important to the legitimacy of subpoenas. The ECPA was enacted in 1986 in order to "update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." S.Rep. No. 99-541, at *1 (1986), reprinted in 1986 U.S.C.C.A.N. 3555.

[14]There is "no talisman" for determining whether a privacy expectation is objectively reasonable. See O'Connor v. Ortega, 480 U.S. 709, 715 (1987). "[C]oncepts of real or personal property law" and conventional attitudes towards privacy are instructive. See Rakas v. Illinois, 439 U.S. 128, 143 n. 12 (1978); see O'Connor, 480 U.S. at 715 (noting factors that "the Court has given weight to," including "the intention of the Framers of the Fourth Amendment, the uses to which the individual has put a location, and our societal understanding that certain areas deserve the most scrupulous protection from government invasion." (quotations omitted)). See id. at 717.

legislatively determined that an individual has a reasonable expectation of privacy in his name, address, social security number, credit card number, and proof of Internet connection. The fact that the ECPA does not proscribe turning over such information to private entities buttresses the conclusion that the ECPA does not create a reasonable expectation of privacy in that information."). However, terms of service agreements between customers and businesses have been considered relevant to characterization of privacy interests. See e.g., Freedman, 412 F.Supp.2d at 181 (considering the customer's contract with his ISP in assessing the reasonableness of the asserted privacy interest); United States v. Maxwell, 45 M.J. 406, 417-18 (C.A.A.F.1996), aff'd, 46 M.J. 413 (C.A.A.F.1996) (holding that defendant had a limited privacy interest in sent email messages in light of the ISP's privacy policy, but noting that "contractual guarantees of privacy by commercial entities do not guarantee a constitutional expectation of privacy.")

Here, unlike the Freedman case, plaintiffs wanted to be completely anonymous and indeed posted their comments on the website using "handles" to identify themselves . See Compl. ¶24. In this regard, they had a subjective expectation of privacy. See Freedman, 412 F.Supp.2d at 181. The issue then becomes whether "society would recognize this expectation as objectively reasonable." See id. It appears that plaintiffs provided their name and address to TWC when they registered to obtain internet access from TWC and that their screen names were directly linked to their true identities in TCW's records, otherwise

defendants would not have been able to obtain plaintiffs' subscriber information from the subpoenas. However, the terms of service agreement or subscriber agreement between plaintiffs and the internet service provider are relevant to characterizing objective privacy interests. See Freedman, 412 F.Supp.2d at 181. The subscriber agreement here has not been fully set forth and accordingly it is difficult to ascertain plaintiffs' expectation of privacy. Given that the Court must accept as true all facts alleged in plaintiffs' Complaint, the Court cannot state with certainty at this stage of the pleadings that plaintiffs' allegations do not implicate the Fourth Amendment. See Kaluczky v. City of White Plains, 57 F.3d 202, 206 (2d Cir.1995) (citation omitted). (In deciding defendants' motion to dismiss, Court accepts as true material facts alleged in Complaint and draws all reasonable inferences in plaintiffs' favor). Thus, defendants' motion to dismiss the Fourth Amendment claim is denied.[15]

## V.   **Section §1983**

To establish personal involvement and implicate §1983, a plaintiff must come forward with proof demonstrating that the defendant: (1) participated directly in the alleged constitutional violation, or (2) failed to remedy the wrong after being informed of the violation or (3) created a policy or custom under which unconstitutional practices

---

[15] Getman also moves for a more definite statement under Rule 12(e) requesting which internet records were allegedly subpoenaed by Getman and the nature of the illegality or any other impropriety alleged by plaintiffs with the subpoena. See Getman Br. at 22. Based on the Court's decision relating to the Fourth Amendment, Getman's motion for more definite statement is denied as moot. Further, Rule 8 only asks a plaintiff for a "short and plain statement of the claim showing that the pleader is entitled to relief. See Fed.R.Civ.P. 8(a)(2).

occurred, or allowed the continuance of such a policy or custom, or (4) was grossly negligent in supervising subordinates who committed the wrongful acts. See Black v. Coughlin, 76 F.3d 72, 74 (2d Cir.1996); see also Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994); Rashid v. Hussain, 1997 WL 642549, *10 (N.D.N.Y.1997). Defendants Secor and Getman argue that other than plaintiff Cirencione, there is no allegation in the Complaint that they were in any way involved in the constitutional deprivations alleged by the rest of the plaintiffs. See Secor Br. at 10; Getman Br. at 14. In addition, plaintiffs' counsel concedes that "Secor was only involved in...Cirencione's situation, and not in the actions of other Seneca County officials toward other Plaintiffs." See Pls. Br. at 4. The Court agrees and hereby dismisses the claims asserted by plaintiffs Robin Lukowski, Robert Lukowski, David Jensen, Thomas Castiglione, Teri Durso and Robert Heieck against Secor and Getman. Accordingly, the Court grants Secor and Getman's motions to dismiss the claims by all the plaintiffs except Cirencione.

Further, Getman argues that Cirencione's §1983 action against him should also be dismissed since the only allegation against him is that he "illegally subpeonaed" information regarding Cirencione. See Getman Br. at 14. The Complaint alleges that Cirencione was "targeted for retaliation" by Getman as a result of her "sending electronic mail to the former County Manager and making internet postings criticizing officials in Seneca County government[.]" See id. ¶39. In addition, the Complaint alleges that the retaliatory action taken by Getman involved "illegally subpoena[ing] Cirencione's internet records using a subpoena

issued by the County Attorney's office[,]" and banning Cirencione from Seneca County property[.]" <u>See</u> <u>id.</u> Based on the above factual allegations, and drawing all reasonable inferences in favor of Plaintiff--as the Court is required to do on a motion to dismiss, the Court finds that the Complaint sufficiently alleges personal involvement of Getman in violation of §1983 to survive the motion to dismiss.

## VI. <u>Electronic Communications Privacy Act</u>

As mentioned above, Congress enacted the ECPA "to update and clarify federal privacy protections and standards in light of dramatic changes in new computer and telecommunication technologies." <u>See</u> 132 CONG. REC. S. 14441 (1986). The ECPA distinguishes between the rights of government entities and the rights of private entities regarding the disclosure of subscriber information by an ISP. Plaintiffs argue that defendants violated the ECPA by using improperly issued subpoenas to solicit their subscriber information from TWC. <u>See</u> Compl. ¶68. Defendant Swinehart argues that the conduct upon which plaintiffs base their complaint against him was specifically authorized by the ECPA. <u>See</u> Swinehart Br. at 11. Getman contends that plaintiffs do not specify the alleged "illegality of the subpoena, nor does it specify that [the] information protected under the [ECPA] was in fact accessed by ...Getman." <u>See</u> Getman Br. at 11.

The ECPA imposes an obligation on governmental entities to follow specific legal processes when seeking such information. <u>See</u> 18 U.S.C. § 2703(c). Congress designed such procedures to both (1) protect

personal privacy against unwarranted government searches and (2) preserve the legitimate needs of law enforcement. See S. REP. NO. 99-541 (1986). Here, plaintiffs' allegations that defendants violated the ECPA by obtaining information from Fingerlakes1.com and TWC through illegally issued subpoenas are "enough to raise a right to relief above the speculative level." See Bell Atlantic, 127 S.Ct. at 1965. Getman further argues that plaintiffs have not alleged that he knowingly or intentionally violated the ECPA. See Getman Br. at 12. The Complaint alleges the following: Cirencione was "targeted for retaliation" by...Getman as a result of her "sending electronic mail to the former County Manager and making internet postings criticizing officials in Seneca County government;" the retaliatory action taken by...Getman involve "illegally subpoena[ing] Cirencione's internet records using a subpoena issued by the County Attorney's office[,]" and banning Cirencione from Seneca County property. See Compl. ¶39. The Court finds that plaintiffs have pled "enough facts to state a claim for relief that is plausible on its face." See id. at 1974. Thus, defendants' motion to dismiss based on the ECPA is denied.

## VII. **Qualified Immunity**

Defendants Larson, Connolly, Secor and Getman move to dismiss the Complaint on the ground that they are entitled to qualified immunity because plaintiffs' allegations fail to implicate any constitutional violations and because defendants' conduct has not been "clearly established to violate a statutory or constitutional right." See Larson Br. at 8; Secor Br. at 19; Getman Reply Br. at 5-6. Qualified immunity

shields government officials "from liability for civil damages insofar as their conduct [in performing discretionary functions] does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." See Kerman v. City of N.Y., 374 F.3d 93, 108 (2d Cir.2004) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

"Qualified immunity protects public officials from liability for civil damages when one of two conditions is satisfied: (a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law." See Russo v. City of Bridgeport, 479 F.3d 196, 211 (2d Cir.2007) (internal quotation marks omitted); accord Wilson v. Layne, 526 U.S. 603, 614 (1999) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.") (internal quotation marks omitted). Because the Court has determined that plaintiffs have adequately alleged violations of the Second Cause of Action and the Fourth Cause of Action, the issue is whether the defendants are entitled to qualified immunity on either of these claims.

"[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted," See McKenna v. Wright, 386 F.3d 432, 435

(2d Cir.2004) (internal quotation marks omitted), but "[a] traditional qualified immunity defense may ... be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint." See id. at 436. In the latter circumstance, "the plaintiff is entitled to all reasonable inferences from the facts alleged, not only those that support his claim, but also those that defeat the immunity defense." See id. at 436. Indeed, "[a] party endeavoring to defeat a lawsuit by a motion to dismiss for failure to state a claim faces a higher burden than a party proceeding on a motion for summary judgment." See id. (internal quotation marks omitted). At this point in the case, the Court finds that defendants have not demonstrated their entitlement to qualified immunity. Faced with plaintiffs' allegations that defendants purposefully violated plaintiffs' clearly-established rights (malicious abuse of process and the ECPA), the Court cannot find at this stage that defendants have demonstrated their entitlement to qualified immunity. Thus, the motion to dismiss on grounds of qualified immunity is denied without prejudice to renewal on a more expansive record.

## VIII.    Conspiracy Claim under 42 U.S.C. §1983

Plaintiffs concede that they "mistakenly addressed their conspiracy claims under 42 U.S.C. § 1985" and now "request leave of court to correct this oversight." See Pls. Br. at 3. As previously discussed, plaintiffs' failure to file a formal motion for leave to amend under Rule 15 is not fatal to their request. See McLaughlin, 962 F.2d at 195. Further, the decision to grant or deny a motion to amend

is within the sound discretion of the district court. See Foman, 371 U.S. at 182. Here, plaintiffs have not provided the Court with a proposed First Amended Complaint, nor have they attempted in their opposition to submit the necessary factual amendments in the form of sworn affidavits in order to bolster their argument and demonstrate a factual basis for alleging a conspiracy claim under §1983. Accordingly, the Court has insufficient information to decide the motion to amend. Thus, plaintiffs' motion to amend the conspiracy claim from U.S.C. §1985 to U.S.C. § 1983 is denied without prejudice. Plaintiff may file a formal motion to amend with a proposed Amended Complaint pursuant to Fed.R.Civ.P. 15(a).

Defendant Seneca County argues that plaintiffs' conspiracy claim under §1983 should be dismissed because even if they amend the complaint, such an amendment would be futile. See Seneca County Reply Br. at 4; see also Getman Reply Br. at 9-10. Seneca County contends that plaintiffs' §1983 conspiracy claim must be rejected under the intracorporate conspiracy doctrine. See id. The doctrine states that officers, agents and employees of a single corporate or municipal entity, each acting within the scope of his or her employment are legally incapable of conspiring with each other. See Crews v. County of Nassau, 2007 WL 4591325 at *12 (E.D.N.Y.2007). An exception to this doctrine is applicable when individual employees are pursuing personal interests wholly separate and apart from the entity. See Anemone v. Metropolitan Trans. Auth., 419 F.Supp.2d 602, 604 (S.D.N.Y.2006). The Court has carefully reviewed the Complaint in its entirety and finds

that it cannot state with certainty that an amendment by plaintiffs will be futile because it would be subject to dismissal for failure to state a claim upon which relief may be granted. Plaintiffs' amendment, if any, may show that defendants were acting solely in their personal interests, separate and apart from their official duties. See Anemone, 419 F.Supp.2d at 604. Therefore, plaintiffs' motion to amend the conspiracy claim from U.S.C. §1985 to U.S.C. § 1983 is denied without prejudice.

### IX.   Motion to Strike Pursuant to Rule 12(f)

Defendants' argue that the introductory paragraphs of plaintiffs' Complaint should be stricken under Rule 12(f) because not one of the statements is a factual allegation and none of the statements comport with Rule 8. See Swinehart Br. at 13-14; Secor Reply Br. at 8; Getman Br. at 17. Further defendants contend that ¶43 should be stricken because they are scandalous and improper matters that are lacking evidentiary support. See Getman Br. at 19. Plaintiffs argue that the practice of having an introductory paragraph is "perfectly appropriate" and defendants can deny the allegations of the introductory paragraph in their answers. See Pls. Br. at 9. In addition, plaintiffs claim that their "beliefs" concerning ¶43 "are formulated from newspapers clippings and other publicly released reports from the grand jury." id.

Pursuant to Rule 12(f), courts may order that any "redundant, immaterial, impertinent or scandalous matter" be stricken from a complaint." See Fed. R. Civ. Pro. 12(f). However, as a general rule, motions to strike are not favorably viewed, and will be granted only

where "there is a strong reason for so doing." <u>See</u> <u>M'Baye v. World Boxing Ass'n</u>, 2007 WL 844552, at *4 (S.D.N.Y.2007) (quoting <u>Lipsky v. Commonwealth United Corp.</u>, 551 F.2d 887, 893 (2d Cir.1976)); <u>see</u> <u>also</u> <u>Thomas v. NASL Corp.</u>, 2000 WL 1725011 (S.D.N.Y. 2000) (motions to strike are generally disfavored and the Second Circuit has cautioned that courts should not tamper with pleadings, particularly at the preliminary stages of litigation, unless there is a strong reason for doing so); <u>Beauchamp v. United States</u>, 1998 WL 180628 (W.D.N.Y.1998). Accordingly, motions based on an argument that the allegations are impertinent and immaterial shall be denied unless it can be shown that no evidence in support of the allegation would be admissible. <u>See</u> <u>Lipsky</u>, 551 F.2d at 893.

Normally, allegations which supply background or historical material or other matter of an evidentiary nature will not be stricken from the pleadings unless they are unduly prejudicial to the defendant. <u>See</u> <u>LeDuc v. Kentucky Central Life Ins. Co.</u>, 814 F.Supp. 820 (N.D.Cal. 1992). A defendant's request to strike irrelevant material from the pleadings should be denied absent a showing that the challenged portion of the pleading has no bearing on the subject matter of the litigation and that its inclusion would prejudice the defendant. <u>See</u> <u>Giuliano v. Everything Yogurt, Inc.</u>, 819 F.Supp. 240 (E.D.N.Y. 1993). I find that the defendants have failed to make such a showing with respect to the

introductory paragraphs. Thus, defendants' motion to strike the "Introduction" is denied.[16]

To prevail on a motion to strike, defendants must show that: "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant." See Roe v. City of New York, 151 F.Supp.2d 495, 510 (S.D.N.Y.2001). The allegation set forth in paragraph 43 contain claims that a Grand Jury report was issued recommending disciplinary action against seven named defendants allegedly for the misuse of subpoena power. See Compl. ¶43. To date there is one Grand Jury report that has been accepted pursuant to §190.85 of the New York Criminal Procedure Law filed in Seneca County. See C.P.L. §190.85. The report however, does not name any individuals and does not recommend any disciplinary action against any person. Beyond the accepted Grand Jury report, any grand jury proceedings in Seneca County are sealed as a matter of law. See id.[17] The purpose of sealing Grand Jury reports under §190.85 is to safeguard

---

[16]Getman requests in the alternative that if the introductory paragraph is not stricken, an order for a more definite statement pursuant to Rule 12(e). See Getman Br. at 20. Getman asks that the Court order that the introduction be clarified and brought into compliance with Rule 8 and 10(b). Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise and direct." See Fed. R. Civ. P. 8(d)(1). In addition, Rule 10(b) states that "[a] party must state its claims ...in numbered paragraphs, each limited as far as practicable to a single set of circumstances." See Fed. R. Civ. P. 10(b). The Court grants Getman's motion for a more definite statement in part. Thus, when amending plaintiffs' Complaint, plaintiffs must comply with Fed.R.Civ.P 8(d)(1) and 10(b) in drafting their introductory paragraph.

[17]C.P.L. § 190.85 provides that a Grand Jury may issue a report criticizing a public official, but such report "must be sealed by the court and may not be filed as a public record, or be subject to subpoena or otherwise be made public" until such time as any motions or appeals with regard to the order have been completed, and until such time when the Court orders that the report be unsealed and filed as a public record. See C.P.L. § 190.85(3). In addition, if the Court is not satisfied that a report meets all the requirements of the C.P.L., "it must make an order sealing such report, and the report may not be filed as a public record, or be subject to subpoena or otherwise be made public." See C.P.L. § 190.85(5).

a named individual from "the evil which was of concern to the courts with regard to reports issued...namely, the impugnment of character and reputation without the chance to defend or appeal." <u>See</u> <u>Matter of Report of August-September 1983 grand Jury III, term IX</u>, 103 A.D.2d 176, 182 (2d Dep't.1984). Accordingly, a report that has been issued but not filed as a public record remains under seal by the order of the New York State Court and by operation of law.

Based on the above, allowing ¶43 to remain is a violation of New York's law regarding Grand Jury secrecy. The Complaint does not allege that any such report was filed as a public record and as such the Grand Jury report would be a nullity and would not be relevant evidence in this action. In addition, the Grand Jury report in ¶43 would be hearsay because it is an out of court statement offered to prove the matters asserted in the report. However, the alleged report does not fit under any of the exceptions to the hearsay rule if it was illegally leaked in contravention of the Grand Jury secrecy laws. <u>See</u> Fed.R.Evid. §§ 801, 802, 803. With respect to plaintiffs' contention that information concerning the alleged reports comes from "newspapers clippings and other publicly released reports from the grand jury," the plaintiffs have been unable to show that such claims are reliable. Therefore, defendants' motion to strike ¶43 is granted.[18]

---

[18]Because the Court granted defendants' motion to strike ¶43, Getman's motion for a more definite statement under Rule 12(e) is moot.

**X.    Motion To Sever**

The power to sever claims lies in the sound discretion of the district courts. See New York v. Hendrickson Bros., 840 F.2d 1065, 1082 (2d Cir.1988). When deciding a motion to sever, a district court should consider the following factors:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

See In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig., 214 F.R.D. 152, 154-55 (S.D.N.Y.2003); see also In re MTBE Products Liab. Litig., 247 F.R.D. 420, 424 (S.D.N.Y.2007). "Severance requires the presence of only one of these conditions." See Cestone v. General Cigar Holdings, Inc., 2002 WL 424654, at *2 (S.D.N.Y.2002) (quoting Lewis v. Triborough Bridge and Tunnel Auth., 2000 WL 423517, at *2 (S.D.N.Y.2000)). Above all, the court must consider "principles of fundamental fairness and judicial efficiency." See Moore's Federal Practice § 21.02[4].

Applying the five factors outlined above, severance of Secor and Getman's claims is warranted under Rule 21. With respect to the first two factors, the claims against Secor and Getman arguably arise from distinct incidents when compared to other plaintiffs. In addition, the facts relating to Cirencione's claims are distinct from those concerning the claims of the remaining plaintiffs. The main allegations against Secor and Getman are alleged issuance of illegal subpoenas and

that Cirencione was "informed that she was banned" from Seneca County property. Indeed in most of the causes of action in the Complaint, the plaintiffs have added a separate paragraph to state the Cirencione also makes claims against Getman and Secor. See Compl. ¶¶ 49, 57, 64. Further, plaintiffs do not argue against severance per se but claim that it should be revisited by the Court during case management conference or at the close of discovery. See Pls. Br. at 4.

With respect to the third factor, severance of the claims will further settlement and promote judicial economy. The Court will analyze the facts of each alleged incident and ascertain liability and damages between multiple plaintiffs and defendants according to incidents that may have no correlation to one another. Judicial resources will not be preserved by retaining one action. This Court's judicial resources will be expended regardless of whether the claims are severed. Thus, the third factor weighs in favor of severing the claims directly asserted by Cirencione involving Secor and Getman because it promotes settlement.

Defendants Secor and Getman also argue that they should not have to participate in all of the proceedings in this case that do not relate to them directly. See Secor Br. at 21. They claim that there will be many depositions and discovery demands exchanged among the parties and most of them will have nothing to do with Secor or Getman. See id. To the extent that the same witnesses and documentary proof will likely apply to the claims of both sets of plaintiffs, this factor is neutral in deciding whether to sever the claims against Secor and

Getman. The fourth factor, however weighs heavily in favor of severing the claims of Cirencione against Secor and Getman as severing will not prejudice remaining plaintiffs and avoids prejudicing Secor and Getman. To link both Getman and Secor to the actions alleged against the rest of the defendants, some of whom have been indicted and/or convicted of crimes in relation to their unrelated activities, would be unfair and prejudicial before a jury. Finally, the Court has already granted Secor and Getman's motions to dismiss the claims by all the plaintiffs except Cirencione as discussed in Point V above. Thus, defendants Secor and Getman's motions to sever are granted. The Court further orders however that the two actions be joined for discovery purposes.

<u>**CONCLUSION**</u>

For the reasons set forth above, I grant the defendants' motions to dismiss in part and deny in part. The court finds the following:

(1) Plaintiffs' Third Cause of Action (Conspiracy in violation of 42 U.S.C. §1985) is dismissed with prejudice;

(2) Plaintiffs Fifth Cause of Action (violation of the Cable Communications Privacy Act) is dismissed with prejudice;

(3) Swinehart's motion to dismiss based on absolute prosecutorial immunity is denied;

(4) Getman's motion to dismiss based on absolute legislative immunity and prosecutorial immunity is denied;

(5) Plaintiffs' First Cause of Action, asserting a violation of their First Amendment rights is dismissed with prejudice;

(6) Plaintiffs' request to amend their Complaint pursuant to Rule 15(a) with respect to the First Cause of Action is denied on the basis of futility;

(7) Defendants' motions to dismiss plaintiffs' abuse of process claims are denied;

(8) Defendants' motions to dismiss based on the statute of limitations is denied;[19]

(9) Defendants' motions to dismiss the Fourth Amendment claim is denied.[20]

(10) Secor and Getman's motions to dismiss the claims of all the plaintiffs except Cirencione are granted;

(11) Getman's motion to dismiss Cirencione's claims in violation of §1983 is denied;

(12) Defendants' motions to dismiss based on the ECPA is denied;

(13) Larson, Connolly, Secor and Getman's motions to dismiss based on qualified immunity is denied;

(14) Plaintiffs' motion to amend the conspiracy claim from U.S.C. §1985 to U.S.C. § 1983 is denied without prejudice;

(15) Defendants' motions to strike the "Introduction" is denied.

(16) Getman's motion for a more definite statement with respect to the Introduction is granted and the Court orders that when amending

---

[19]Based on the the Court's decision concerning the Statute of Limitations, Getman's motion for more definite statement on this issue is rendered moot.

[20]Given the Court's decision concerning the Fourth Amendment, Getman's motion for more definite statement on this issue is rendered moot.

their Complaint, plaintiffs must comply with Fed.R.Civ.P 8(d)(1) and 10(b) in drafting the Introduction;

(17) Defendants' motions to strike ¶43 is granted;[21]

(18) Secor and Getman's motions to sever are granted and the Court further orders that the two actions be joined for discovery purposes.

**ALL OF THE ABOVE IS SO ORDERED.**

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

Dated:     Rochester, New York
           February 24, 2009

---

[21]Getman's motion for a more definite statement under Rule 12(e) with respect to ¶43 is rendered moot.